# THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### WESTERN DIVISION

DENISE WRIGHT                 *

             *

          Plaintiff        *

             *

V.                        *

             *        NO: 4:14CV00665  SWW

DEPARTMENT OF VETERANS    *

AFFAIRS, Robert A McDonald,    *

Secretary                 *

             *

          Defendant     *

             *

             *

## ORDER

Denise Wright ("Wright") brings this employment dispute under Title VII of Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, against her employer, the Department of Veterans Affairs (the "VA").   Before the Court is the VA's motion for summary judgment [ECF Nos. 19, 20, 21], Wright's response in opposition [ECF Nos. 25, 26, 27, 28], and the VA's reply [ECF No. 31].   After careful consideration, and for reasons that follow, the Court finds that the VA is entitled to summary judgment in its favor.

## I.  Standard of Review

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).   As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)**.**  Once the moving party has properly supported its motion for summary

judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The non-moving party may not rest on mere allegations or denials of his pleading but must come forward with 'specific facts showing a genuine issue for trial. *Id.* at 587. "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995).

## II. Background

The following facts are undisputed. Wright, a black female, began working for the VA in 2007 as a medical support assistant, a position that carried a GS-4 wage grade. In October 2008, Wright applied for and was promoted to the position of patient services assistant, a GS-5 position. In November 2012, Wright began working as a medial support assistant, the GS-5 position that she currently holds.

In 2009, Wright filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC"), complaining that her supervisor at the time, Carla Smith, prevented her from being placed on a diversity committee. In 2011, Wright filed a second EEOC charge, which is the predicate charge in this lawsuit. With her 2011 EEOC charge, Wright claimed that from March through June 2011, her supervisor, Timothy Reynolds ("Reynolds"), retaliated against her for filing the 2009 EEOC charge and subjected her to a hostile work environment and

disparate treatment based on her race and gender.[1]

   With her *pro se* complaint in this case, Wright stated her claims as follows:

   Reprisal.   Former EEO activity, treating white females [and] white coworkers
   differently and unfair as well as unequal to me.  Placing more duties on me than the
   Caucasians/ white employees.  Making and causing a hostile working environment.
   Moving me from my office  area because I requested a desk audit due to me accruing
   more responsibilities and duties that was not on my position description.[2]

On October 1, 2015, attorney Sheila F. Campbell entered an appearance on Wright's behalf and

filed a response in opposition to summary judgment, which states Wright's claims as follows:

(1) race-based disparate treatment; (2) race-based hostile work environment; and (3) retaliation

for protected activity (filing an EEOC charge in 2009).

## III.  Discussion

   The VA moves for summary judgment, generally asserting that Wright is without a single

---

   [1]Wright's specific allegations related to her 2011 EEOC charge are enumerated in an
administrative investigative report as follows:

•      Reynolds assigned Wright duties that had been previously assigned to her white
       coworker, Debbie Craven ("Craven").

•      Reynolds placed Wright on a performance improvement plan ("PIP") for the stated
       reason that she had purchased items from an unapproved vendor.  Wright alleged that the
       PIP was unnecessary and that Reynolds could have simply asked her to stop the
       purchases.

•      Reynolds held Wright to strict time-reporting standards but permitted Craven to come
       and go as she pleased without reporting leave.

•      Reynolds changed Wright's job assignment and working hours after she requested a desk
       audit.

*See* ECF No. 20-1.

   [2]Compl. (ECF No. 2), ¶¶ 8-9.

viable claim.  The Court will address each claim and related arguments separately.

**Disparate Treatment**

To establish discrimination based on disparate treatment, Wright shoulders the burden to show, with circumstantial or direct evidence, that the complained-of conduct was motivated by race discrimination.  Because Wright  presents no evidence that directly points to the presence of a discriminatory motive, the Court will analyze her disparate treatment claims under the three-part framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972).  Under the *McDonnell Douglas* framework, Wright must first establish a *prima facie* case of discrimination by showing that (1) she is a member of a protected class; (2) she met the legitimate expectations of her employer; (3) she suffered adverse employment action; and (4) similarly situated employees that were not members of her protected class were treated differently.  *See Philip v. Ford Motor Co.*, 413 F.3d 766, 768 (8th Cir. 2005).

The VA asserts that Wright is unable to meet the third prong of her *prima facie* burden.  In the context of alleged disparate treatment, an adverse employment action is a tangible change in working conditions that produces a material employment disadvantage.  *See Wedow v. City of Kansas City*, 442 F.3d 661, 671 (8th Cir.2006)(quoting *Sallis v. Univ. of Minn.*, 408 F.3d 470, 476 (8th Cir. 2005)).  "Mere inconvenience without any decrease in title, salary, or benefits is insufficient to show an adverse employment action."  *Cruzan v. Special Sch. Dist, No. 1*, 294 F.3d 981, 984 (8th Cir. 2002).

Wright contends that she suffered adverse employment action in two ways.  First, she claims that Reynolds assigned her too much work and made her complete work that was assigned to one of her white coworkers, Debbie Craven ("Craven").  In deposition, when asked

4

to provide more detail regarding this allegation, Wright testified:

> Because he would take duties from the white female and give them to me. And when [Craven] was responsible, like, the back-up person for [another department] . . . , [Craven] could sit in her [regular work station and perform her back-up duties for another department]. But when he took that duty from [Craven] to place it on me, he told me I couldn't sit in [my regular work station]; he wanted me to physically go over [to the other department] and assist them. So I had to take my work from [my work station] on a couple of days that [Craven] was going to be off the rest of the week, so I had to do my duties, her duties.[3]

Wright also testified that Reynolds assigned her the task of making sure that other employees had personnel badges and that he "was just giving [her] more and more duties." [4]  On May 6, 2011, Wright requested a desk audit,[5] an agency procedure by which a personnel specialist assesses the work an employee actually performs and determines whether that work matches the employee's pay grade.  On May 23, 2011, Reynolds transferred Wright to another department, where she had fewer duties but kept the same salary and benefits. It is not clear from the record whether the requested desk audit  was ever completed, or whether Wright's transfer negated the need for the procedure.

An increased workload that materially changes an employee's duties can, in some instances, constitute adverse employment action.   Here, however, Wright's allegations and deposition testimony indicate that any imbalance in Craven's and Wright's work assignments persisted for a brief period, approximately two to three months,[6] and Wright provides no

---

[3]Wright Dep., 63 (ECF No. 20-1).

[4]Wright Dep., 58 (ECF No. 20-1).

[5]ECF No. 20-1, Def's Ex. #5.

[6]*See* Wright Dep., 46 (ECF No. 20-1).

evidence showing that the alleged unequal workload produced a material employment disadvantage for her. It is undisputed that during the period in question, Wright maintained the same salary, bonuses, and benefits, and she received the highest job performance rating possible. In order to find adverse employment action under these facts, one must speculate that a review of Wright's assigned duties would have enabled her to secure a higher pay grade. The Court finds that Wright has failed to allege facts or present evidence showing that her increased workload amounted to adverse employment action.[7]

Second, Wright claims that Craven left work whenever she desired and failed to report her time away. It is undisputed that Craven took long lunches without taking leave, but Wright presents no evidence that Reynolds permitted Craven to take long lunches or leave without accurately reporting her absences. Wright assumes that Reynolds knew about and failed to correct Craven's misconduct, but such speculation is insufficient to establish that Reynolds permitted Cravens to take unreported leave, while holding Wright to strict timekeeping practices. In sum, the Court finds no genuine issues for trial with respect to Wright's claim of disparate treatment based on a disparity in work assignments or timekeeping requirements.

**Racially Hostile Work Environment**

An employer creates an actionable hostile work environment if "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe and pervasive to alter the conditions of the victim's employment and create an abusive working

---

[7]Nor does Wright's lateral transfer to another department on May 23, 2012 amount to adverse employment action sufficient to support a discrimination or retaliation claim. It is undisputed that the move resulted in a decreased workload for Wright and that she kept the same salary, benefits, and opportunities for bonuses.

environment." *Harris v. Forklift Systems, Inc*., 510 U.S. 17, 21 (1993).  To hold an employer

liable for a racially hostile work environment caused by the actions of a supervisor, the

aggrieved employee must show: (1) she is a member of a protected group; (2) unwelcome

harassment occurred; (3) a causal nexus existed between the harassment and her protected-group

status; and (4) the harassment affected a term, condition, or privilege of employment. *See Carter*

*v. Chrysler Corp*., 173 F.3d 693, 700 (8th Cir.1999).[8]

      To be actionable, an allegedly hostile work environment must be both objectively and

subjectively offensive--one that a reasonable person would find hostile or abusive, and one that

the victim in fact did perceive to be so.  *See Faragher v. City of Boca Raton*, 524 U.S. 775, 787,

118 S.Ct. 2275, 2283 (1998)(setting forth standards to evaluate claims of hostile work

environment based upon sexual harassment); *see also Gipson v. KAS Snacktime Co*., 171 F.3d

574, 578 (8th Cir. 1999) ("The same standards are generally used to evaluate claims of hostile

work environment based upon sexual harassment and racial harassment.").  In determining

whether sufficient evidence of a hostile work environment has been presented, the totality of the

circumstances must be considered, including the frequency and severity of the discriminatory

conduct, whether such conduct was physically threatening or humiliating, as opposed to a mere

offensive utterance, and whether the conduct unreasonably interfered with the employee's work

performance.  *See  Vajdl v. Mesabi Academy of KidsPeace, Inc*., 2007 WL 1201867, *3 (8th Cir.

---

      [8]With regard to claims of coworker harassment, a plaintiff must show that her employer
knew or should have known of the harassment and failed to take appropriate remedial action.
*See Joens v. John Morrell & Co*. 354 F.3d 938, 940 (8th Cir. 2004).  Such proof is not necessary
with regard to a claim that a supervisor committed harassment.  An employer may be vicariously
liable for an actionable hostile environment created by a supervisor with immediate, or
successively higher, authority over the plaintiff.  *See Burlington Indus., Inc. v. Ellerth*, 524 U.S.
742, 764-65 (1998).

April 25, 2007)(citing *Duncan v. General Motors Corp.*, 300 F.3d 928, 884 (8th Cir. 2002)).

Here, Wright presents evidence that on April 14, 2011, she sent Reynolds an email message complaining that Craven was often away from her work station, which hindered Wright's ability to complete her job duties.  Reynolds responded:  "If you were more concerned with your duties than keeping up with your coworkers then you may be able to get more of your duties done."[9] Wright sent Reynolds a reply message, repeating her complaint and reminding him that she had previously asked him to instruct Craven to be at her work station when Wright was at lunch or taking a break.[10] Reynolds responded:

> I am sorry if you feel that you are being treated unfairly, but what happens between me and your coworkers is  privileged  information just as the communication between you and me is confidential.  Your worries should be completing all duties that come up in your area whether it is your primary duties or not.  We are here to take care of the veterans.  If you feel that you are being treated unfairly, please feel free to contact your union representative and follow their guidance if you must.[11]

Wright claims that Reynolds acknowledged that she was overwhelmed with work and informed her, and her union representative, that he was training another person to assume some of her duties.  But according to Wright, Reynolds took no action to lessen her workload and instead gave her additional duties.

The Court finds that no reasonable person would find the aforementioned incidents and communications to be hostile or abusive, and the record is void of any evidence that the complained-of conduct had any connection to Wright's race.   Viewing the evidence in a light most favorable to Wright, the record simply does not support a hostile environment claim.

---

[9]ECF No. 25, Ex. #17.

[10]ECF No. 25, Ex. #18.

[11]*Id.*

**Retaliation**

To establish a *prima facie* case of retaliation, Wright must show that (1) she engaged in protected conduct, (2) a reasonable employee would have found the alleged retaliatory action materially adverse, and (3) the materially adverse action was causally linked to the protected conduct. *See Higgins v. Gonzales,* 481 F.3d 578, 589 (8th Cir. 2007)(citations omitted). "To violate Title VII, the retaliation must be harmful enough that a reasonable employee would find it materially adverse." *Young-Losee v. Graphic Packaging Intern., Inc.* 631 F.3d 909, 913 (8th Cir. 2011)(citing *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405 (2006)). "An action is materially adverse if it 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id*.

Wright claims that Reynolds knew about her 2009 EEOC charge and that he retaliated against her in various ways. First, she claims that Reynolds enlisted the assistance of an employee named Ramona Mack ("Mack") to "try to coach her into doing underhanded and unethical timekeeping procedures . . . against . . . Wright."[12]  According to Wright, by seeking Mack's assistance, Reynolds attempted to "pit one black against another black."[13]  Wright submits Mack's affidavit, which states that Reynolds asked her to engage in "underhanded and unethical timekeeping procedures" but that Mack "would inform . . . Wright of the proper paperwork that [she] needed to process . . . for her medical leave . . . ."[14]  Mack adds that Reynolds advised her not to associate with Wright because she was a trouble maker.

---

[12]Pl.'s Resp. Opp'n Summ. J. [ECF No. 26], 13.

[13]*Id*.

[14]Pl's Resp. Mot. Summ. J. (ECF No. 25), Ex. #1 (Mack Aff.).

Wright has failed to show that Reynold's alleged attempt to "pit" Mack against her amounts to materially adverse action that was causally linked to Wright's 2009 EEOC charge. Assuming that Reynolds encouraged Mack to harm Wright in some way, it does not appear that he gained Mack's cooperation.  Furthermore, Wright provides no information as to when Reynolds encouraged Mack to engage "underhanded and unethical" time-keeping procedures,[15] what those procedures entailed, or when Wright became aware of Reynolds's attempt to gain Mack's assistance.

Second, Wright provides evidence that on May 6, 2011, she informed Reynolds that Craven was away from her desk and could not be located for a twenty-minute period and that Craven and two other employees sat in Craven's office for one and one-half hours and then took a smoking break.  Wright claims that the same day, Reynolds gave her additional duties to perform, and she requested a desk audit but received no response to her request.  Wright offers no facts indicating that the aforementioned events, which occurred approximately two years after she filed an EEOC charge in 2009, were causally linked to her protected activity, and for reasons previously explained, Wright has failed to show that her increased workload amounted to adverse employment action.

Third, Wright argues that in April 2011, Reynolds unjustifiably placed her on a "bogus" performance improvement plant ("PIP") for the stated reason that she failed to follow guidelines

---

[15]The Eighth Circuit has explained: "Although it is difficult to find a principle neatly explaining why each of our cases held temporal connection was or was not sufficient to satisfy the causation requirement, it appears that the length of time between protected activity and adverse action is important."  *Smith v. Allen Health Systems, Inc*, 302 F.3d 827, 833 (8th Cir. 2002).

and procedures required for ordering items from outside vendors.  However, it is undisputed that Reynolds subsequently issued a performance appraisal, which he placed in Wright's personnel file, which stated that Wright had successfully completed the PIP.  Furthermore, it is undisputed that Wright received the highest possible rating on her performance evaluation for the relevant period, and she also received a bonus.  Viewing the record in a light most favorable to Wright, the Court finds no evidence that the PIP adversely affected the material terms or conditions of Wright's employment or had a causal connection to her 2009 EEOC charge.  In sum, the Court finds no genuine issues for trial with respect to Wright's retaliation claim.

### IV.  Conclusion

For the reasons stated, the Court finds that Plaintiff has failed to come forward with facts demonstrating genuine issues for trial.  IT IS THEREFORE ORDERED that Defendant's motion for summary judgment [ECF No. 19] is GRANTED.  Pursuant to the judgment entered together with this order, this action is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED THIS 5TH  DAY OF NOVEMBER, 2015.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE